IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| BENNIE GILLESPIE, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 10 C 2247 |
| | ) | Judge Virginia M. Kendall |
| JOHN E. POTTER, Postmaster General, United States Postal Service, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bennie Gillespie ("Gillespie") filed suit against John Potter, the Postmaster General of the United States Post Office ("Postal Service"), alleging that he was discriminated against based on his age, color, race, and sex in violation of the Age Discrimination Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII"); and that he was retaliated against when the Postal Service refused to reappoint him as a transitional employee. The Postal Service moves for summary judgment. Because the record before the Court fails to establish that the Postal Service discriminated or retaliated against Gillespie, the Motion for Summary Judgment is granted.

## STATEMENT OF UNDISPUTED FACTS[1]

Local Rule 56.1 provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(C). As the moving party, the Postal Service submitted material facts supported by

---

[1] The Court will refer to the Postal Service's 56.1 facts as "P.S. ¶ __." and Gillespie's Response to the Postal Service's 56.1 facts as "G. Resp. ¶ __." Gillespie did not file his own additional facts as Local Rule 56.1 permits. *See* L.R. 56.1(b)(3)(B), (C).

citations to portions of the record and affidavits, as Rule 56.1(a) requires. Gillespie responded to each of the Postal Service's 56.1 Statement of Material Facts, including citations to the record—by Exhibit number, not by page or line number—for several, but not all, of those facts that he disputed. Gillespie did not present additional material facts of his own.

The Court treats Gillespie's Memorandum in Support of Plaintiff's Right to a Trial by Jury as a response brief and notes that his memorandum containing five numbered points—Introduction; Work Performance; Accident; Union and Management; and Legal—does not contain any specific citations to the record. *See U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Therefore, the Court's review of Potter's claim will be confined to the facts set forth in the Postal Service's Rule 56.1 statements and Gillespie's responses that contain adequate citations to the record. *See Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1108-09 (7th Cir. 2004); *see Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002) (Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment.").

### A. Employment as a Transitional Employee

The Postal Service employed Gillespie, a 49-year old African American male, as a transitional employee city carrier assigned to the Park Ride, Illinois Post Office beginning on March 31, 2008. (P.S. ¶¶ 1, 6.) Transitional employees are non-career employees appointed for a term not to exceed 360 days and cannot be reappointed without a break in service. (P.S. ¶ 4.) While transitional employees can be reappointed to additional terms, there is no provision in the National Agreement between the National Association of Letter Carriers and the Postal Service providing for or creating a right or entitlement to reappointment for transitional employees. (P.S. ¶ 5.)

As a transitional employee, Gillespie was evaluated by John Gattuso ("Gattuso"), the Supervisor of Customer Service at the Park Ridge Post Office. (P.S. ¶ 13.) Gattuso gave Gillespie "unacceptable" ratings for two different rating periods relating to Gillespie's work quality. (P.S. ¶ 14.) Gattuso also gave Gillespie satisfactory marks on his most recent evaluation on May 31, 2008. (G. Resp. ¶ 14.) Thomas Hill ("Hill"), a supervisor at the Park Ridge Post Office, documented an instance on January 16, 2009 where Gillespie called at 4:49 p.m. to say that he had a collection and three relays left to do; Hill instructed Gillespie to finish only the three relays, expecting that to take under an hour; Gillespie, however, did not return for three more hours.[2] (P.S. ¶ 15.) On many occasions, Gattuso observed Gillespie calling Hill to request assistance because Gillespie was unable to finish his assignments. (P.S. ¶ 16.) Julian Singleton ("Singleton"), a Supervisor of Customer Service at the Park Ridge Post Office, along with Gattuso, performed street supervisions of Gillespie. (P.S. ¶ 17.) Singleton also observed Gillespie engaging in unsafe practices that Gillespie was notified of.[3] (*Id.*)

On October 22, 2008, Gillespie reported to Gattuso that he had fallen down and hurt both of his wrists about a month earlier but that Gillespie had not seen a doctor or reported the incident. (P.S. ¶ 18.) Gattuso learned that Gillespie had previously been instructed to report his accident to Hill but that he had failed to do so. (P.S. ¶ 19.) Consequently, the Postal Service issued Gillespie

---

[2] Gillespie argues that "there was no way to do those relays in that amount of time when I worked there" due to the size of the condominium complex and his unfamiliarity with the location. (G. Resp. ¶ 15.) Gillespie's comments, however, are not substantiated by his citations to the record and, as such, do not create a genuine fact dispute and will not be credited by the Court.

[3] Gillespie's unsubstantiated disagreement with these observations does not create a genuine fact dispute.

3

a letter of warning for failure to report his accident as instructed.[4] (*Id.*)

Gillespie's 360-day term as a transitional employee expired on March 25, 2009 and on March 30, 2009, the Postal Service notified Gillespie that he would not be reappointed for an additional term. (P.S. ¶¶ 7-8.) The decision not to reappoint Gillespie was made by Postmaster Ruby Helen Brooks ("Brooks") after she considered Gillespie's work history—specifically, Gillespie's work performance, failure to follow instructions, attendance, and failure to report an accident—and consulted with her staff.[5] (P.S. ¶¶ 11, 12; G. Resp. ¶¶ 9, 11-12.)

**B.     EEOC Complaint**

Gillespie filed an EEOC Complaint of Discrimination on April 26, 2009, alleging discrimination based on race, sex, and age as well as retaliation. (P.S. ¶ 20.) Gillespie added a claim of discrimination based on color when he filed his Complaint before this Court. G. Resp. ¶ 20.)

**STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable

---

[4] While Gillespie contends that his wrist injury was diagnosed as tendinitis by Postal Service physicians and that he reported his injury to several supervisors, his record citations are confusing at best. (G. Resp. ¶¶ 18, 19.) Gillespie includes excerpted pages of a medical report and an accident report but neither creates a genuine fact dispute because the parties agree that Gillespie eventually received treatment for his injured wrists. Gillespie's record citations do not support his claim that he reported his injury to three out of his four supervisors and, as such, will not be credited by the Court.

[5] Gillespie's assertion that he was rehired for a second 360-day assignment by the regional office but that Brooks overturned that decision is not supported by the exhibits that he cites to. (G. Resp. ¶ 4.) As an initial matter, Gillespie cites broadly to several of his exhibits but fails to provide the Court with specific page or line numbers containing the information he is relying on. For example, Gillespie's reliance on Exhibit 3H—Brooks's statement that Gillespie "was up for one year reinstatement"—is inconclusive. As such, Gillespie's exhibits do not create a genuine fact dispute and the Court will not credit Gillespie's assertion that Brooks reversed his rehiring.

4

inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court, however, will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## DISCUSSION

### I. Discrimination

Gillespie alleges that he was unlawfully discriminated against based on his age, color, race, and sex when the Postal Service refused to reappoint him to another transitional employee position. To state a claim of discrimination under Title VII or the ADEA, Gillespie must proceed under the direct or indirect methods.[6]

---

[6] The Postal Service moves the Court to find Gillespie's color discrimination claim waived for failure to raise it in his EEOC complaint. *See Thompson v. Fairmont Chi. Hotel*, 525 F. Supp. 2d 984, 989-90 (N.D. Ill. 2007) (finding plaintiff's failure to list color discrimination on her EEOC charge warranted dismissal of color discrimination claim in her complaint). Although this exhaustion argument would be sufficient to dismiss this claim, Gillespie's Title VII color discrimination claim fails on the merits for the reasons set forth below.

5

A.      **Direct Method**

A plaintiff establishes unlawful discrimination under the direct method by presenting direct or circumstantial evidence that creates a "convincing mosaic of discrimination." *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009). A plaintiff must put forth evidence that demonstrates he is a member of a protected class and as a result suffered the adverse employment action. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 n.3 (7th Cir. 2006). The focus of the direct method of proof is not whether the evidence offered is "direct" or "circumstantial" but rather whether the evidence "points directly" to a discriminatory reason for the employer's action. *Id*. Direct evidence of discrimination essentially consists of an admission by the employer that it took an adverse employment action against an employee based upon prohibited animus. *See Rogers v. City of Chi.*, 320 F.3d 748, 753 (7th Cir. 2003). Circumstantial evidence of intentional discrimination can consist of suspicious timing, ambiguous statements, differing treatment of similarly situated employees, personal animus, pretext and other evidence which allows the jury to reasonably infer discrimination. *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007). To survive summary judgment, a plaintiff must demonstrate that age was the "but for" cause of the adverse employment decision. *Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343, 2350 (2009).

Here, Gillespie fails to set forth facts or arguments sufficient to demonstrate that his age, color, race, or sex were the "but for" causes of the Postal Service's decision not to reappoint him to a transitional employee position. Even ignoring that Gillespie failed to set forth facts appropriately in his Rule 56 statement, he has also failed to argue facts that demonstrate any actions taken against him were based on his age, color, race, or sex in his memorandum. Therefore, the Court will

consider whether Gillespie has stated a discrimination claim under the indirect method.

**B.      Indirect Method**

A plaintiff creates a presumption of unlawful discrimination under the indirect method by establishing a prima facie case of discrimination. *See Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1290 (7th Cir. 1997). To establish a prima facie case of discrimination under the ADEA or Title VII, a plaintiff must put forth evidence that: (1) he belongs to a protected class; (2) he performed his job according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably by the employer. *See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004). Summary judgment is appropriate if a plaintiff fails to establish any of these elements. *See Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008). If a plaintiff does establish each of these elements, he creates a presumption that shifts the burden to the employer to "produce a legitimate, noninvidious reason for its actions." *Id*. at 673. If the employer satisfies its burden of production and rebuts plaintiff's prima facie case of discrimination, the burden shifts back to the plaintiff to show that the employer's reasons are false and only a pretext for discrimination. *Id*. at 672.

Here, the Postal Service argues that Gillespie is unable to satisfy the second, third, and fourth elements of his prima facie case of employment discrimination under the ADEA and Title VII.

**i.      Performed Job According to Employer's Legitimate Expectations**

The undisputed facts demonstrate that Gillespie was not performing his job according to the Postal Service's standards. Gillespie received unsatisfactory evaluations, was observed engaging in unsafe practices, and on several occasions failed to timely complete his work. Gillespie also received a letter of warning for failing to follow a supervisor's instructions relating to a workplace

7

accident. While Gillespie challenges some of the negative performance assessments, he does not provide the Court with a detailed refutation of any of them. *Cf. Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1460-61 (7th Cir. 1994) (detailed refutation of events which underlie the employer's negative performance assessment creates a factual issue whether employer's explanation is credible or merely a pretext for discrimination). Regarding his repeated failure to timely complete his work, Gillespie states that "there was no way to do those relays in that amount of time" but does not substantiate this claim with any relevant reference to the record. Gillespie also disagrees that he suffered a work-related accident and failed to notify his supervisors; instead, Gillespie claims that his wrist injury was diagnosed as tendinitis. Again, though, Gillespie does not specifically refute when the accident occurred or that he failed to report it to Hill. Nor does Gillespie sufficiently dispute that he requested assistance to finish his rounds on many occasions. Nonetheless, the Court notes that an employer's sole reliance on "performance issues as the justification for its adverse action" may be insufficient to survive summary judgment because "the performance element of the prima facie case cannot be separated from the question whether the employer proffered a nonpretextual explanation for its challenged conduct." *Duncan v. Fleetwood Motor Homes of Ind., Inc.*, 518 F.3d 486, 491 (7th Cir. 2008); *see also Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009) (where an employee accuses employer of lying about its legitimate employment expectations in order to set up a false rationale for termination, this issue merges with the question of pretext).

    **ii.**   **Similarly Situated Employees**

  The Postal Service, however, also argues that Gillespie cannot demonstrate that similarly situated employees outside of his protected class were treated more favorably than he was. Employees are similarly situated if they dealt with the same supervisor, were subject to the same

standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). To satisfy the similarly situated prong of the test, "an employee must be directly comparable in all material respects." *Ineichen v. Ameritech*, 410 F.3d 956, 960 (7th Cir. 2005) (internal quotations and citation omitted).

Here, Gillespie's Complaint references a "white male [Postal Service employee who] made lots of mistakes and wasn't doing the job as well as me and kept his job" as well as a "black female [Postal Service employee who] kept her job." Compl. ¶ 13. In his response to the Postal Service's Motion for Summary Judgment, Gillespie references two Postal Service employees by name who he claims were similarly situated yet treated more favorably: Jerome Holec ("Holec") and Angela Griffith ("Griffith").[7] Doc. 16 at 5. In his response, Gillespie claims that Holec had a motor vehicle accident but was not terminated and that Griffith went to the hospital after falling and hurting her knee and also called in sick on especially cold days. *Id*. Gillespie claims that neither Holec or Griffith were "let go." *Id*.

Without more information, however, Gillespie has failed to demonstrate that Holec and Griffith are similarly situated to him. *See Ineichen*, 410 F.3d at 960. Gillespie alludes to the fact that Griffith reported to the same supervisor that he does but does not provide facts to support that inference; Gillespie does not allege that Holec reported to the same supervisor. Nor does Gillespie explicitly state that Holec and Griffith were transitional employees. Moreover, Gillespie does not

---

[7] It is not clear whether Holec and Griffith are the same two Postal Service employees—one white male and one black female—referenced in Gillespie's EEOC complaint. Gillespie's failure to further identify the one white male and one black female, however, prevent the Court from being able to treat them as comparators. Therefore, the Court proceeds in its analysis of Holec and Griffith and not the unidentified white male and black female employees.

9

allege that Holec and Griffith also had difficulty finishing their routes on time or engaged in other unsafe work practices. In fact, Gillespie's own exhibits demonstrate that he was the only transitional employee at the Park Ridge Post Office that was cited for both attendance and performance issues.[8] (G. Resp. Ex. 6H.) Therefore, Gillespie cannot demonstrate that either Holec or Griffith were similarly situated to Gillespie or that they engaged in similar conduct as Gillespie. Accordingly, Gillespie cannot satisfy his burden under the indirect method. *See Peele v. County Mut. Ins. Co.*, 288 F.3d 319, 331 (7th Cir. 2002) (plaintiff's failure to present similarly situated employees "dooms her Title VII and ADEA claims").

### iii. Adverse Employment Action

The Postal Service also contends that Gillespie cannot demonstrate that he suffered an adverse employment action when the Postal Service decided not to reappoint him as a transitional employee. Gillespie argues, without factual support, that he was initially reappointed to the transitional employee position but that the reappointment was subsequently terminated by Brooks. The Court, however, cannot credit Gillespie's claim that he was initially reappointed because it is not supported by the record. Moreover, Gillespie has not provided the Court with any precedent holding that a decision not to reappoint a transitional employee constitutes an adverse employment action. Indeed, the National Agreement between the National Association of Letter Carriers and the Postal Service explicitly states that transitional employees "may be separated at any time upon completion of their assignment or for lack of work." (P.S. Ex. 4 at 143.) Nevertheless, the Court need not determine whether the Postal Service's decision not to reappoint Gillespie constituted an

---

[8] Gillespie's exhibit notes that Holec was cited for performance issues but not attendance issues and that Griffith was cited for attendance issues but not performance issues.

adverse employment action because the Court has already found that Gillespie failed to demonstrate that similarly situated employees were treated more favorably than he was.

          iv.      **Pretext**

Even if Gillespie was able to satisfy the elements of his prima facie case, he is unable to demonstrate that the Postal Service's reasons for not reappointing him as a transitional employee were a pretext for discrimination. To demonstrate pretext, a plaintiff must show that the employer's nondiscriminatory reason was dishonest and that the employer's true reason was based on discriminatory intent. If the plaintiff cannot offer this evidence directly, he must present indirect evidence challenging the credibility of the employer's reasoning or demonstrating that the reasons relied upon for the adverse employment action are factually baseless. *See Senske*, 588 F.3d at 507 (to show an employer's explanations are not credible, employee must point to evidence that they are not the real reasons, not grounded in fact, or are insufficient to warrant the employment decision); *Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 683 (7th Cir. 2007).

Gillespie does not present facts demonstrating that the Postal Service's grounds for discipline and its decision not to reappoint him were factually baseless. Accordingly, Gillespie cannot state a claim of discrimination under the ADEA or Title VII and the Court grants summary judgment to the Postal Service on Gillespie's age, color, race and sex discrimination claims.

## II. Retaliation

Gillespie also alleges that the Postal Service retaliated against him. Under the direct method, Gillespie may demonstrate retaliation by presenting evidence of a statutorily protected activity, an adverse action, and a causal connection between the two. *See Burks*, 464 F.3d at 758. To prevail under the indirect method, Gillespie must show that: (1) he engaged in statutorily protected activity;

(2) he performed his job according to his employer's legitimate expectations; (3) despite meeting these expectations, he suffered a materially adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *See Atanus*, 520 F.3d at 677. Accordingly, under either the direct or indirect method, Gillespie must demonstrate that he engaged in statutorily protected activity. Here, however, Gillespie supplies no facts or argument describing a protected activity. As such, Gillespie cannot maintain his retaliation claim.

## CONCLUSION AND ORDER

For the reasons stated, Gillespie has failed to set forth any facts to support a claim of discrimination or retaliation. Therefore, the Court grants the Postal Service's Motion for Summary Judgment.

So ordered.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: August 10, 2011